FIRST NATIONAL INSURANCE COMPANY OF AMERICA *vs.*
COMMONWEALTH.

Suffolk. March 9, 1978. — August 29, 1978.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Practice, Civil,* Action against Commonwealth. *Pleading, Civil,* Complaint. *Governmental Immunity. Surety.*

A claim by the surety on a performance and payment bond for a public
building contract, alleging that the Commonwealth had made pay-
ments to the contractor in disregard of the surety's interest in
certain contract funds, was sufficient to state a cause of action
against the Commonwealth under G. L. c. 258, § 1, even though the
surety was not a party to a contract with the Commonwealth. [251]

CIVIL ACTION commenced in the Superior Court on July
19, 1976.

The case was heard by *Lynch,* J., on a motion to dismiss.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Paul R. Devin (Alexander H. Pratt, Jr.,* with him) for
the plaintiff.

*Richard E. Rafferty,* Assistant Attorney General (*Wil-
liam A. Mitchell,* Assistant Attorney General, with him)
for the Commonwealth.

ABRAMS, J. First National Insurance Company of
America (surety) commenced this action against the Com-
monwealth alleging an abuse of discretion by the Com-
monwealth in disregard of the surety's interest in certain
contract funds. The surety's action was dismissed under
Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), and it
appealed. We transferred the case to this court on our
own motion. We hold that the complaint sufficiently

states a claim against the Commonwealth under G. L. c. 258, § 1, and we reverse the judgment dismissing the action.

The complaint alleges that on April 30, 1973, the Commonwealth entered into a contract with Allied Heating Co., Inc. (Allied), for additions to the steam distribution system at the University of Massachusetts, Amherst campus. On the same day the surety issued performance and payment bonds on the contract which named Allied as principal and the Commonwealth as obligee. On September 30, 1974, the surety notified the Commonwealth by mailgram that Allied was in default on the contract and requested that the Commonwealth make no further payments to Allied. The substance of the mailgram was confirmed in a letter dated October 3, 1974.

On October 3, 1974, the Commonwealth issued a check to Allied in the amount of $38,405.55 as a payment under the contract. Allied did not use the proceeds of the check to pay its suppliers. The payment by the Commonwealth to Allied resulted in a depletion of the contract funds and allegedly constituted an abuse of the Commonwealth's discretion in unreasonable disregard of the surety's interest in those funds. The surety seeks reimbursement of the $38,405.55 and any other relief deemed appropriate.

The surety argues that it has set forth a claim under G. L. c. 258, § 1, as amended by St. 1973, c. 1114, § 337, because by virtue of that statute the Commonwealth has waived its immunity to "claims of the character which civilized governments have always recognized," *Murdock Parlor Grate Co.* v. *Commonwealth,* 152 Mass. 28, 31 (1890); *Arthur A. Johnson Corp.* v. *Commonwealth,* 306 Mass. 347, 351 (1940), and its claim is of such a character. The Commonwealth replies that the surety's claim is not within the scope of G. L. c. 258, § 1, and that the "sovereign" has not abrogated its immunity by statute or judicial decision in regard to the allegations made in the complaint.[1] The trial judge, in a well reasoned memoran-

___

[1] The Commonwealth contends that the surety's complaint must fail in any event because no specific allegations are made referring to a

dum tracing the judicial interpretations of G. L. c. 258, § 1, and its predecessor statutes, declined to expand the coverage of G. L. c. 258, § 1, beyond what is generally perceived to be the governing rule.

General Laws c. 258, § 1, as amended by St. 1973, c. 1114, § 337, provides that "[t]he superior court, except as otherwise expressly provided, shall have jurisdiction of all claims against the commonwealth." While the 1973 amendment rewrote the entire section, the effect of the amendment was to change the statute to conform to the language of the Massachusetts Rules of Civil Procedure by deleting the words "at law or in equity" which appeared in St. 1887, c. 246. This latter statute expanded the limited application of Pub. Sts. 1882, c. 195, § 1, which conferred on the Superior Court jurisdiction only of claims against the Commonwealth "which are founded on contract for the payment of money." See *Murdock Parlor Grate Co.* v. *Commonwealth*, 152 Mass. 28, 30 (1890); *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 615 (1973).

"The object of [St. 1887, c. 246, a predecessor of G. L. c. 258, § 1] . . . [was] to provide a convenient tribunal for the determination of claims of the character which civilized governments have always recognized." *Murdock Parlor Grate Co.* v. *Commonwealth*, 152 Mass. 28, 31 (1890). The waiver of immunity thus granted by c. 258, § 1, and its predecessors has primarily been interpreted as applying only in the area of contracts.[2] While most cases allowing

---

right of subrogation. We disagree. Under Mass. R. Civ. P. 8, 365 Mass. 749 (1974), intendments are to be made in favor of the pleader. *Charbonnier* v. *Amico*, 367 Mass. 146, 152 (1975). Clearly, the Commonwealth has been notified of the nature of the claim and the grounds on which the surety relies. That is all that is required. See *Druker* v. *Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976).

[2] General Laws c. 258, § 1, as amended by St. 1973, c. 1114, § 337, has no effect on governmental immunity in tort actions. See *Glickman* v. *Commonwealth*, 244 Mass. 148, 150 (1923). However, we note that the General Laws have been amended by striking out c. 258 and by insert-

actions brought pursuant to G. L. c. 258, § 1, involved contracts to which the Commonwealth was a party,[3] we do not think that a direct contractual relationship is a prerequisite to maintaining a suit against the Commonwealth. Rather, a claim arising in a contractual setting, although not involving a direct contract between the plaintiff and the Commonwealth, is contemplated by the waiver of immunity under G. L. c. 258, § 1: "the effect of the statute is to make the Commonwealth answerable down to the judgment in its own courts for any just and legal claim against it, whether as trustee or otherwise, exactly as though it were a private individual." *Nash* v. *Commonwealth,,* 174 Mass. 335, 339 (1899).[4] Although the surety in this case was not a party to a contract with the Commonwealth, its claim arose out of the legal consequences of the acts and relationships arising from a contractual context. We therefore conclude that the surety's claim was sufficiently connected with a contract to bring it within the waiver of immunity granted by G. L. c. 258, § 1.

---

ing a new c. 258 (St. 1978, c. 512, § 15). The conclusion we reach in this case is consistent with the language of G. L. c. 258, § 2, as appearing in St. 1978, c. 512, § 15, which states in pertinent part, "Public employers shall be liable for injury or loss of property . . . caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances . . . ."

[3] For some recent cases holding the Commonwealth liable for breach of a contract to which it was a party see, e.g., *Alpert* v. *Commonwealth,* 357 Mass. 306 (1970); *Farina Bros.* v. *Commonwealth,* 357 Mass. 131 (1970); *R. Zoppo Co.* v. *Commonwealth,* 353 Mass. 401 (1967).

[4] The distinguishing facts and procedural settings in more recent cases interpreting G. L. c. 258, § 1, would seem to explain the reasons why the interpretation given St. 1887, c. 246, by the court in the *Nash* case was viewed as not pertinent. See *Glickman* v. *Commonwealth,* 214 Mass. 148 (1923); *Charles I. Hosmer, Inc.* v. *Commonwealth,* 302 Mass. 495 (1939); *Arthur A. Johnson Corp.* v. *Commonwealth,* 306 Mass. 347 (1940).

Other jurisdictions have also allowed actions by sureties against sovereigns in similar circumstances. See *Argonaut Ins. Co.* v. *United States*, 434 F.2d 1362 (Ct. Cl. 1970); *Royal Indem. Co.* v. *United States*, 529 F.2d 1312 (Ct. Cl. 1976); *United States* v. *Continental Cas. Co.*, 512 F.2d 475 (5th Cir. 1975); *United States Fidelity & Guar. Co.* v. *United States*, 475 F.2d 1377 (Ct. Cl. 1973); *United States* v. *Continental Cas. Co.*, 346 F. Supp. 1239 (N.D. Ill. 1972). See also *Reliance Ins. Cos.* v. *Alaska State Hous. Auth.*, 323 F. Supp. 1370 (D. Alas. 1971).

The allowance of the motion to dismiss was therefore erroneous. We express no views, however, concerning the merits of any claim which might be proved under the complaint.

*Judgment reversed.*