Lenk, J.
While on duty as a uniformed police officer for the Town of Reading and during a foot pursuit of suspects alleged to have stolen a motor vehicle, the plaintiff John T. Kyle (“Kyle”) was attacked by a state police dog, then under the supervision of State Trooper Jack Lannon (“Trooper Lannon"). Seeking damages for injuries he sustained as a result of the attack, Kyle commenced the instant action against the Commonwealth under the Massachusetts Tort Claims Act, G.L.c. 258, §2, alleging that the Commonwealth was negligent in its selection, training, and control of the state police dog and for inadequately training Trooper Lannon as a state police dog officer (Count 1). Kyle also alleges that the Commonwealth, as the owner and keeper of the dog, violated G.L.c. 140, §55.
The Commonwealth now moves for summary judgment on both counts based upon three grounds: (1) failure of presentment under G.L.c. 258, §4; (2) sovereign immunity; and (3) immunity under the discretion-aiy functions exception, G.L.c. 258, §10(b).[1] For the reasons herein stated, the Commonwealth’s motion is allowed in part and denied in part.
BACKGROUND
The undisputed facts are as follows.[2] On April 12, 1989, the State Police Department of the Commonwealth became engaged in a high-speed chase of an alleged stolen vehicle. The state police pursued the vehicle into the Town of Reading where Kyle and his partner, then on duty as municipal police officers, joined the pursuit. The operator of the stolen vehicle eventually drove into a fire hydrant on Haven Street in Reading, Massachusetts, and fled the scene on foot, running up Haven Street and then onto Parker Street.[3] Kyle drove his cruiser to the corner of Haven and Parker Streets where he commenced a foot pursuit of the suspect.
*242 Meanwhile, Trooper Lannon of the State Police K-9 Unit, who had joined the pursuit earlier, released his police dog, a rottweiler named Fritz, after the suspect.[4] Since Kyle was positioned between the suspect and the police dog, Fritz attacked Kyle grasping his upper right arm and eventually knocking him to the ground. When Trooper Lannon’s initial attempts to intervene were unsuccessful, Kyle’s partner fired a shot at the dog. Although the bullet struck a parked car, the gunfire further incited Fritz to attack.[5] Trooper Lannon then reordered the dog to release its grip. Fritz obeyed and Trooper Lannon removed Fritz from Kyle.
Kyle told the officers present at the scene to continue after the suspect. Kyle then walked himself to a nearby fire station where he received first aid. In resuming the pursuit, the police dog Fritz tracked the suspect through several residential properties and led Trooper Lannon to a parked car where the suspect was hiding.
On May 12, 1989, Kyle sent notice of his claim against the Commonwealth to Charles V. Bany, the Secretary of Public Safety, pursuant to G.L.c. 258, §4. Barry received the letter on May 18, 1989. The letter stated, in pertinent part:
The claim is based upon the negligence of State Trooper Jack Lannon of the K-9 Unit, Framingham Barracks, in failing to properly and adequately control and restrain his attack dog, a Rottweiler named Fritz. As a result of the Trooper’s negligence, the dog violently attacked Mr. Kyle who thereby sustained severe personal injuries and permanent scarring.
Def. Exh. A.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “Acomplete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (citing Celotex v. Catrett, 477 U.S. 317, 322 (1986)).
A. Presentment
In support of summary judgment, the Commonwealth argues that Kyle failed to comply with the requirements of the presentment statute, G.L.c. 258, §4, thereby precluding his claims for negligent selection and training of the police dog Fritz, and for inadequately training Trooper Lannon as a police dog officer. Specifically, the Commonwealth asserts that Kyle’s presentment letter was devoid of any indication of these claims. In opposition, Kyle contends that the presentment letter sufficiently informed the appropriate executive officer that he was asserting a negligence claim. While the presentment letter specifically asserted Trooper Lannon was negligent in failing to control Fritz, Kyle asserts that “it is not such a great leap to allege” negligence for the inadequate training of Fritz and Trooper Lannon, as well as negligence in the selection of Fritz as a police dog.
Under General Laws c. 258, §4, “[a] civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose . . .” G.L.c. 258, §4. Accord Berube v. Northampton, 413 Mass. 635, 637 (1992). Presentment is “a condition precedent to bringing suit,” Krasnow v. Allen, 29 Mass.App.Ct. 562, 568 n. 8 (1990), rev. denied 409 Mass. 1102 (1991), and “must be made ‘in strict compliance with the statute.’ ” Gilmore v. Commonwealth, 417 Mass. 718, 721 (1994), quoting Weaver v. Commonwealth, 387 Mass. 43, 47 (1982). Accord Pickett v. Commonwealth 33 Mass.App.Ct. 645, 646 (1992), rev. denied 414 Mass. 1103 (1993). All actions based on the Massachusetts Torts Claim Act are subject to the presentment requirement of G.L.c. 258, §4, unless specifically exempted by statute. Fearon v. Commonwealth, 394 Mass. 50, 53 (1985).[6]
“Presentment ensures that the responsible public official receives notice of the claim so that that official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future.” Gilmore v. Commonwealth, 417 Mass. 718, 721-22 (1994), quoting Lodge v. District Attorney for the Suffolk District, 21 Mass.App.Ct. 277, 283 (1985), rev. denied, 396 Mass. 1106 (1986). Even though a presentment letter is not precise in defining the legal basis of a plaintiffs claim, the presentment requirements of G.L.c. 258, §4 will be satisfied if the letter is “not so obscure that educated public officials should find themselves baffled or misled” by the asserted claim. See Gilmore v. Commonwealth 417 Mass. at 723 (holding presentment letter sufficient despite failure to identify the legal basis of the plaintiffs claim). Nevertheless, the requirements of G.L.c. 258, §4 will not be met where the claim alleged in the presentment letter is invalid on its face, or where the negligence alleged in the complaint is completely absent from the presentment letter and based on an entirely different set of facts. Compare Tambolleo v. West Boylston, 34 Mass.App.Ct. 526 (presentment inadequate where letter described an intentional tort *243 explicitly barred by G.L.c. 258, §10(c) while complaint alleged negligence), rev. denied, 416 Mass. 1103 (1993), and Wrightman v. Methuen, 26 Mass.App.Ct. 279 (1988) (presentment letter which focused exclusively on supervision in a schoolyard held inadequate for allegation of negligence in obtaining medical attention). In such instances, an investigation of the information alleged in the presentment letters would not have alerted officials to these other claims.
In the case at bar, the presentment letter adequately informed the Commonwealth that Kyle was making a claim for injuries he sustained as a result of Fritz’s attack. Although Kyle alleged negligence in Trooper Lannon’s handling of Fritz, “educated public officials should (not) find themselves baffled or misled with respect to his assertion of a claim” for the negligent training of both Trooper Lannon and Fritz. See Gilmore v. Commonwealth, 417 Mass. at 723. Accordingly, the presentment requirements have been met insofar as Kyle’s complaint alleges negligent training of Fritz as a police dog and Trooper Lannon as a police dog officer.
Nevertheless, Kyle’s claim for the negligent selection of Fritz as a police dog does not pass the presentment hurdle. The presentment letter did not provide adequate notice to public officials that they would need to undertake an investigation regarding Fritz’s selection as a police dog. Rather, a claim of negligent selection involves a different set of facts from those contained in the presentment letter. See Wightman v. Methuen, 26 Mass.App.Ct. 279, 282 (1988) (rejecting claim for negligence in obtaining medical attention where presentment letter focused on a distinct set of facts). Accordingly, the Commonwealth’s motion for summary judgment on Count I is allowed with respect to the claim of negligent selection of Fritz as a police dog.
B. Sovereign Immunity
Next, the Commonwealth moves for summary judgment on Count II of Kyle’s complaint which alleges a violation of G.L.c. 140, §155, the Massachusetts dog bite statute. As grounds therefor, the Commonwealth asserts that the claim is barred by sovereign immunity. I agree.
The doctrine of sovereign immunity shields a state from being sued in its own courts without its consent. E.g. Woodbridge v. Worcester State Hosp., 384 Mass. 38, 42 (1981); Broadhurst v. Director of the Div. of Employment Security, 373 Mass. 720, 722 (1977); General Elec. Co. v. Commonwealth, 329 Mass. 661, 664 (1953).[7] Even when a state consents to suit, “it can be impleaded only in the manner and to the extent expressed .. . [by] statute.” Massachusetts Elec. Co. v. Athol One, Inc., 391 Mass. 685, 687 (1984), quoting Woodbridge v. Worcester State Hosp., 384 Mass. 38, 42 (1981). Statutory waivers of sovereign immunity are stringently construed; “[c]onsent to suit must be expressed by the terms of a statute, or appear by necessary implication from them.” Woodbridge v. Worcester State Hosp., 384 Mass. 38, 42 (1981). See also Onofrio v. Department of Mental Health, 411 Mass. 657, 659 (1992); Massachusetts Elec. Co. v. Athol One Inc., 391 Mass. 685, 687 (1984).[8]
The legislature abrogated the doctrine of sovereign immunity for certain tort actions against the Commonwealth and its political subdivisions pursuant to the Massachusetts Torts Claim Act (the ‘Torts Claim Act”). G.L.c. 258, §1 et seq.; Rogers v. Metropolitan District Comm’n, 18 Mass.App.Ct. 337, 338-39, rev. denied, 393 Mass. 1102 (1984); Dinsky v. Framingham, 386 Mass. 801, 804 (1982). Section 2 of the Torts Claim Act holds public employers “liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office of employment. . .” G.L.c. 258, §2. While the Act explicitly exempts intentional torts from its ambit, G.L.c. 258, § 10(c), it covers claims arising out of ordinary or gross negligence “because such a claim qualifies as a negligent or wrongful act or omission’ under §2.” McNamara v. Honeyman, 406 Mass. 43, 46 (1989). Liability of public employers based on common law claims, however, are not precluded in areas to which the Torts Claim Act has no application. Lane v. Commonwealth, 401 Mass. 549, 551 (1988).
In the instant case, Kyle’s complaint alleges a violation of G.L.c. 140, §155, the Massachusetts dog bite statute. The statute provides, in pertinent part:
If any dog shall do any damage to either the body or property of any person, the owner or keeper . . . shall be liable for such damage, unless such damage shall have been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog . . .
G.L.c. 140, §155. Since the dog bite statute does not explicitly waive the state’s common law immunity, the doctrine of sovereign immunity bars such a claim unless it can be maintained under the Torts Claim Act. See Massachusetts Elec. Co. v. Athol One, Inc., 391 Mass. 685, 687 (1984) (sovereign immunity bars suits against the Commonwealth unless statute waives immunity expressly or by necessary implication); Woodbridge v. Worcester State Hosp., 384 Mass. 38, 42 (1981) (same).
The Torts Claim Act explicitly requires a “negligent or wrongful act or omission” by a public employee. G.L.c. 258, §2. The dog bite statute, however, imposes liability without requiring a misfeasance or nonfea-sance by the owner or keeper of a dog. See G.L.c. 140, §155. Since the Torts Claim Act does not waive the Commonwealth’s immunity for strict liability claims, Kyle’s claim is barred by sovereign immunity. See Massachusetts Elec. Co. v. Athol One, Inc., 391 Mass. 685, 687 (1984) (requiring waiver of sovereign immu *244 nity for suits against the Commonwealth).[9] Accordingly, the Commonwealth’s motion for summary judgment is allowed as to Count II of the plaintiffs complaint.[10]
C. Discretionary Function Exception
Finally, the Commonwealth asserts it is entitled to summary judgment because Kyle’s claims are barred by the discretionary functions exception to the Torts Claim Act, G.L.c. 258, § 10(b). Kyle disputes that the discretionary functions exception applies to the instant case.[11]
The Torts Claim Act, which permits citizens to sue the Commonwealth for certain torts, does not apply to “any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused.” G.L.c. 258, §10(b). In Harry Stoller & Co. v. Lowell, 412 Mass. 139 (1992), the Supreme Judicial Court adopted a two-prong inquiry to determine whether the conduct at issue falls within the discretionary functions exception. See Sena v. Commonwealth, 417 Mass. 250, 255 (1994) (noting two-prong analysis employed in deciding whether conduct is insulated by the discretionary functions exception).
Under the first prong, the court must decide “whether the governmental actor had any discretion at all as to what course of conduct to follow.” Sena v. Commonwealth, 417 Mass. at 255-56, quoting Harry Stoller & Co. v. Lowell 412 Mass. 139, 141 (1992). Where a course of conduct is prohibited by “statute, regulation or established agency practice,” the governmental actor has no discretion and the discretionary functions exception does not apply. Harry Stoller & Co. v. Lowell 412 Mass. at 141.
Here, Kyle challenges the training of both Fritz and Trooper Lannon. The training of police dogs and police dog officers necessarily includes a degree of “discretion as to what course of conduct to follow” to prepare dogs and officers for the tasks they will face. See Sena v. Commonwealth, 417 Mass. at 256 (discretion involved in investigating crime). Likewise, controlling and supervising a police dog involves discretion as police officers “constantly . . . rely on their own judgment, based on their experience and their knowledge of the law.. .” Id. Therefore, the training of Fritz and Trooper Lannon, as well as Trooper Lannon’s control of Fritz, falls within the realm of discretionary actions.
Under the second prong, the court must determine whether the discretion at issue “is the kind of discretion for which § 10(b) provides immunity.” Harry Stoller & Co. v. Lowell, 412 Mass. at 141. Section 10(b) of the Torts Claim Act provides immunity “only for discretionary conduct that involves policy making or planning.” Id. Where the conduct in question “rest[s] on the exercise of judgment and discretion and represent[s] planning and policymaking” it is immune under §10(b). Id. at 142. “If the injury-producing conduct was an integral part of governmental policymaking or planning, if the imposition of liability might jeopardize the quality of governmental process, or if the case could not be decided without usurping the power and responsibility of either the legislative or executive branches of government, governmental immunity would probably attach.” Id. Where, however, the conduct at issue “involves . . . the carrying out of previously established policies or plans, such acts should be governed by the established standards of tort liability applicable to private individuals or entities.” Harry Stoller & Co. v. Lowell 412 Mass. at 142, quoting Whitney v. Worcester, 373 Mass. 208, 218 (1977).
The use of dogs in police work represents a policy decision by the executive branch.[12] Additionally, the decision as to how to train Fritz and Trooper Lannon required the exercise of judgment and discretion on the part of the Commonwealth. Where, as here, “decisions regarding whether, when, [and] how” to use a dog in police work are discretionary, the Commonwealth is immune from liability. See Sena v. Commonwealth, 417 Mass. at 257 (whether, when, how, and whom to investigate are discretionary and therefore fall under Section 10(b)).
Other considerations support this result. Judicial scrutiny of the training of police dogs and police dog officers “could ‘[usurp] the power and responsibility of the legislative and executive branches.’ Continuing judicial criticism of [police] practices not otherwise unlawful, and therefore within the discretion of law enforcement officials, would impinge on the longstanding domain of the executive branch." Sena v. Commonwealth, 417 Mass. 250, 258 (1994) (internal citations omitted). Since the training of police dogs and police dog officers involves discretionary functions and represents a policy decision, the Commonwealth is entitled to summary judgment under G.L.c. 258, §10(b).
Trooper Lannon’s alleged negligence in controlling Fritz, however, is not protected under G.L.c. 258, § 10(b). While the use of police dogs represents a policy decision, Trooper Lannon’s actions in the case at bar do not. Rather, Trooper Lannon’s conduct involved following “previously established policies,” and as such are not protected under the discretionary functions exception. Accordingly, the Commonwealth’s motion for summary judgment is allowed on Count I insofar as it alleges negligent training of Fritz the police dog and Trooper Lannon. Summary judgment on Count I is denied, however, with respect to the allegation of negligent control of the police dog Fritz.
ORDER
For the foregoing reasons, defendant’s motion for summary judgment is ALLOWED as to Count I respecting claims for negligent selection and training of Fritz, and for negligent training of Trooper Lannon. *245 Summary judgment is also ALLOWED on Count II of the plaintiffs complaint. Summary judgment is DENIED, however, on Count I insofar as it alleges negligence in the control of the state police dog Fritz.

 Although the Commonwealth also moved for summary judgment based on the public duty rule, it later abandoned this ground at oral argument.

 The Commonwealth concedes these facts only for the purpose of its motion for summary judgment.

 There appears to be more than one suspect involved in the chase.

 The Commonwealth argues in its brief that before the stolen car crashed into the fire hydrant, Trooper Lannon advised all Troopers in the area to remain in their cruisers in the event of a foot pursuit. The Commonwealth also contends that Trooper Lannon arrived on the scene before Kyle, checked the area to ensure it was safe to release the police dog, and then released the dog. According to the Commonwealth, Kyle commenced his foot pursuit of the suspect after Trooper Lannon had released the police dog. For the purposes of this motion, however, this court considers the evidence with an indulgence in the opposing party’s favor. E.g. All Seasons Services, Inc. v. Commissioner of Health and Hospitals of Boston, 416 Mass. 269, 269-70 (1993); Parent v. Stone & Webster Engineering Corp., 408 Mass. 108, 113 (1990); Conley v. Massachusetts Bay Transp. Auth., 405 Mass. 168, 173 (1989).

 According to the Commonwealth, Fritz is trained to react aggressively to gunfire.

 The plaintiff does not argue that his claim is exempted from the presentment requirement.

 Sovereign immuniiy and immunity provided by the Eleventh Amendment, while distinct concepts, are related in that both are designed to protect state government: sovereign immunity protects states from being sued in their own courts, whereas the Eleventh Amendment shields states from federal judicial intervention. Ramah Navajo School Bd. v. Bureau of Revenue, 720 P.2d 1243, 1248 (N.M.App.), cert. denied sub nom. New Mexico Taxation & Revenue Dept. v. Ramah Navajo School Bd., 479 U.S. 940 (1986). The Supreme Judicial Court has noted, however, that even though the Eleventh Amendment is directed at the judicial power of the federal government rather than the states, states may claim immuniiy from suit in their own courts where the Eleventh Amendment would bar the suit in federal court. See Morris v. Massachusetts Maritime Academy, 409 Mass. 179, 182, 184 (1991).

 Both the legislature and the judiciary have the authority to abrogate the doctrine of sovereign immuniiy. See Hannigan v. The New Gamma-Delta Chapter of Kappa Sigma Fraternity, Inc., 367 Mass. 658, 662 (1975), superseded by statute as stated in Irwin v. Commissioner of Dep't of Youth Services, 388 Mass. 810 (1993).

 This court also notes that the Massachusetts Torts Claim Act closely resembles its federal counterpart, 28 U.S.C. §§1346(b) et seq. (1988). See Sena v. Commonwealth, 417 Mass. 250, 255 (1994) (chapter 258 “tracks” the Federal Torts Claim Act). Similar to the Massachusetts Torts Claim Act, the federal statute requires a negligent or wrongful act by one of its employees acting within the scope of employment for liability to attach. Chancellor by Chancellor v. United States, 1 F.3d 438, 439 (6th Cir. 1993). Therefore, actions against the United States based on strict liability cannot be maintained under the Federal Torts Claim Act and therefore are barred by sovereign immunity. Laird v. Nelms, 406 U.S. 797, 798-99, reh. denied, 409 U.S. 902 (1972); Dalehite v. United States, 346 U.S. 15, 45, reh. denied, 346 U.S. 841, and reh. denied, 346 U.S. 880 (1953), and reh. denied, 347 U.S. 724 (1954). Likewise, the Massachusetts dog bite statute which imposes strict liability is barred by the doctrine of sovereign immunity. Compare Chancellor by Chancellor v. United States, 1 F.3d 438, 440 (6th Cir. 1993) and Brotko v. United States, 727 F.Supp. 78, 83 (D.R.I. 1989).

 Kyle’s argument that the legislature would have repealed G.L.c. 140, §155A if it intended to maintain sovereign immunity is without merit. Chapter 140, §155A, is an indemnity provision for police officers who, in the course of their official duties, keep a dog that injures another’s property or person. This provision necessarily implies that a police officer can be held personally liable for such damage, but does not indicate by any interpretation imaginable that the Commonwealth has waived its sovereign immunity.

 Although Kyle argues against summary judgment by asserting that the negligent release of a police dog in the instant circumstances is not protected under § 10(b), his complaint does not contain such an allegation. Rather, Kyle’s complaint alleges that Trooper Lannon negligently controlled the police dog Fritz, and that the Commonwealth is liable for negligently training both Fritz and Trooper Lannon as a police dog and police dog officer, respectively.

 The plaintiff offers nothing to dispute this assertion.